# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

LAURA NEAL, as Special Administratix )
of the Estate of PARKER STEPHENS, )
deceased, )
                                    )
        Plaintiff, )
                                    )     Case No. CIV-23-114-PRW
v. )
                                    )
OKLAHOMA COUNTY CRIMINAL )
JUSTICE AUTHORITY, et al., )
                                    )
        Defendants. )

## ORDER

Before the Court is United States Magistrate Judge Shon T. Erwin's Report and Recommendation (Dkt. 78), which recommends that the Court grant Defendants' Motion for Summary Judgment (Dkt. 53) but only as to Defendant Matthew Francis. It recommends the Court deny summary judgment to the Defendants Board of County Commissioners for Oklahoma County ("Board"), Oklahoma County Criminal Justice Authority ("OCCJA"), and William Cunningham. Only the Board filed a timely objection. For the reasons given below, the Court **ADOPTS IN PART** Judge Erwin's Report and Recommendation (Dkt. 78).

### *Background*

Laura Neal brings this lawsuit on behalf of the Estate of Parker Stephens, after Oklahoma County Jail detention officers allegedly failed to deliver prompt medical care following Mr. Stephens's suicide. In her Complaint (Dkt. 1), Plaintiff alleges that Officers Francis, Cunningham, and Jacob Hamiliton were deliberately indifferent to Mr. Stephens's

1

medical emergency and failed to protect him from serious bodily harm. Plaintiff also seeks to hold the Board and OCCJA liable both for the officers' actions and for alleged systemic deficiencies in staffing and procedures. On February 28, 2025, all Defendants, except Officer Hamiliton, moved for summary judgment, arguing that (1) Plaintiff lacks Article III standing to pursue a *Monell* claim against the Board, (2) Plaintiff cannot succeed on a *Monell* claim as a matter of law against the Board and OCCJA, (3) there is no evidence that Officers Cunningham or Francis were involved in the alleged violation of Mr. Stephens's rights, and (4) Officers Cunningham and Francis are entitled to qualified immunity. Judge Erwin recommends granting summary judgment only in favor of Officer Francis. The Board objects to Judge Erwin's recommendation to deny them summary judgment.

### Legal Standard

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."[1] An objection is "proper" if it is both timely and specific.[2] A specific objection "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."[3] Additionally, "[a]n 'objection' that merely reargues the underlying motion is little different than an 'objection' that simply refers the District Court back to the original motion papers; both are

---

[1] Fed. R. Civ. P. 72(b)(3).

[2] *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1059 (10th Cir. 1996).

[3] *Id.* (citation and internal quotation marks omitted).

insufficiently specific to preserve the issue for de novo review."[4] In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate.[5]

### *Discussion*

To establish municipal liability under *Monell v. Dep't of Soc. Servs. of New York*, a plaintiff must show "(1) an official policy or custom (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury occurring."[6] The Board raises three specific objections to Judge Erwin's determination that Plaintiff satisfied each of these requirements. First, that Judge Erwin wrongly decided there was a municipal policy or custom in place because he failed to distinguish the Board from the OCCJA in his analysis. Second, that Judge Erwin imputed additional duties on the Board that Oklahoma law and the public trust do not require. Third, that Judge Erwin did not address the causal nexus requirement between the Board and Mr. Stephen's death. The Court reviews these portions of the Report and Recommendation *de novo*.

---

[4] *Vester v. Asset Acceptance, L.L.C.*, No. 1:08-cv-01957-MSK-LTM, 2009 WL 2940218, at *8 (D. Colo. Sept. 9, 2009) (citing *One Parcel of Real Prop.*, 73 F.3d at 1060).

[5] *Summers v. State of Utah*, 927 F.2d 1165, 1167–68 (10th Cir. 1991).

[6] *George ex rel. Bradshaw v. Beaver Cnty. ex rel. Beaver Cnty. Bd. of Comm'rs.*, 32 F.4th 1246, 1253 (10th Cir. 2022).

## I.    The Board's Policy and Custom

The municipality cannot be held liable on a *respondeat superior* theory.[7] Instead, the "municipality itself must have generated the 'moving force' behind the alleged constitutional violation, either through official policy or widespread and pervasive custom," to support the imposition of liability.[8] Such policies and customs can take any of the following shapes:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[9]

The Board's first and second objections are intertwined as they both relate to the question of whether the Board had a policy or custom in place that contributed to Mr. Stephens's death. The Board is correct that Plaintiff does not articulate a particularized policy or custom of the Board that contributed to Mr. Stephens's death. Plaintiff, however, argues that this omission is not fatal under the nondelegable duty doctrine.[10] Under such

---

[7] *Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1274–75 (10th Cir. 2022).

[8] *Id.* at 1275 (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)).

[9] *Bryson v. City of Oklahoma City*, 627 F.3d 784, 787 (10th Cir. 2010) (citing *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010) (cleaned up).

[10] Resp. (Dkt. 66), at 18 n.2.

doctrine, Plaintiff asserts that OCCJA's policy of understaffing and poor supervision *becomes* the Board's policy.[11]

Several courts have recognized, in various formulations, that municipalities cannot avoid the constitutional duty to provide adequate medical care to prisoners by contracting out constitutional duties to private healthcare entities.[12] Some courts have referred to this rule as the nondelegable duty doctrine. Essentially, this body of case law stands for the proposition that if the private entity has "the responsibility to make final decisions regarding [prisoner medical care], then their acts, policies and customs become official policy" of the municipality.[13] To emphasize, "[t]he underlying rationale is not based on *respondent superior*, but rather on the fact that the private company's policy becomes that of the [c]ounty if the [c]ounty delegates final decision-making authority to it."[14] Alternatively, if the county did not delegate final decision-making authority, the county could still be held liable when it is has actual or constructive knowledge that its agents are violating constitutional rights.[15] The motivating principle behind these cases is the concern that counties will rely on private entities to insulate themselves from liability.

---

[11] *Id.*

[12] *See, e.g., King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1250 (6th Cir. 1989); *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985).

[13] *Ancata v. Prison Health Servs, Inc.*, 769 F.2d 700, 705  n.9 (11th Cir. 1985).

[14] *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) (citing *Ancata*, 769 F.2d at 705–06).

[15] *Id.* at 1021.

Cases imposing the nondelegable duty doctrine beyond the medical care and private entity context are comparatively limited and less uniform. Some courts have applied similar lines of reasoning in the Fourth Amendment context when a county contracts with a city (or vice versa) to run their jails. And these cases generally diverge down two paths: one following the Sixth Circuit in *Deaton v. Montgomery County* and another following the District of Massachusetts in *Ford v. City of Boston*.[16] Where the paths differ is in what showing must be made before the delegatee-city's policy or custom can be attributed to the delegator-county. In *Deaton,* the county must be deliberately indifferent to the delegatee-entity's failure to follow the law.[17] But, in *Ford*, no state of mind must be shown; instead, the delegator-county has an affirmative duty to monitor jail conditions.[18]

The Court concludes that the Board is entitled to judgment as a matter of law. To be clear, the Court does not hold that the nondelegable duty doctrine or the analogous reasoning in cases such as *Deaton* could never apply in a similar case. Rather, Plaintiff's cursory invocation of the doctrine, coupled with her apparent assumption that it imposes automatic liability on the Board, is insufficient to survive summary judgment. Plaintiff fails to identify which recognized basis for municipal liability she relies upon—whether delegation of final policymaking authority or deliberate indifference—and offers no developed evidentiary argument supporting either theory. Moreover, given that the Tenth

---

[16] *Deaton v. Montgomery Cnty.*, 989 F.2d 885 (6th Cir. 1993); *Ford v. City of Boston*, 154 F. Supp. 2d 131 (D. Mass. 2001).

[17] *Deaton*, 989 F.2d at 889.

[18] *Ford*, 154 F. Supp. 2d at 148–49.

Circuit has not adopted the nondelegable duty doctrine, Plaintiff does not explain why this Court should extend that reasoning here. A passing reference to a novel theory of liability, confined to a single footnote and unsupported by any meaningful analysis, cannot create a genuine dispute of material fact. Compounding this deficiency, Plaintiff repeatedly conflates the OCCJA with the Board, even though nearly all proffered evidence relates solely to the conduct and policies of the OCCJA or its officers, rather than to any policy or custom attributable to the Board itself.

## II.    Remaining Portions of the Report and Recommendation

The Court reviews the unobjected-to portions of the Report and Recommendation to confirm that there is no clear error on the face of the record.[19] Finding none, the Court concurs with Judge Erwin's well-reasoned conclusions and analysis.

### *Conclusion*

Accordingly, the Court **ADOPTS IN PART** Judge Erwin's Report and Recommendation (Dkt. 78), as set forth herein, and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment (Dkt. 53). The Court **GRANTS** summary judgment in favor of Matthew Francis and the Board. The Court **DENIES** summary judgment to the remaining Defendants: the OCCJA and William Cunningham.

---

[19] *Summers*, 927 F.2d at 1167–68.

**IT IS SO ORDERED** this 31st day of March 2026.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

8